# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re:
**JAMES GILMORE WILSON**,             Chapter 7
     Debtor                                           Case No. 17-12895-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JANE OLSZESKI TORTOLA,**
**JOAN OLSZESKI, and JUDY OLSZESKI**
**HOLCOMB,**
     Plaintiffs
v.                                                        Adv. P. No. 17-1140
**JAMES GILMORE WILSON,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Motion to Dismiss Complaint filed by James Gilmore Wilson (the "Defendant," the "Debtor," or "Wilson"). The Defendant seeks dismissal of the Complaint filed by Jane Olszeski Tortola, Joan Olszeski, and Judy Olszeski Holcomb (collectively, the "Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7009 and 7012(b), respectively. The Plaintiffs, through their single-count Complaint under 11 U.S.C. § 523(a)(2)(A), seek to except a debt in the principal sum of $3,530,000, plus

1

accruing, post-default interest, from the Debtor's discharge on the ground that the funds were obtained by false pretenses, false representations and actual fraud.

**II. THE COMPLAINT**

The Court paraphrases the facts alleged in Plaintiffs' Complaint.

On or about May 31, 2006, for valuable consideration, Wilson, the sole officer and shareholder of OP Ohio Corporation ("OP Ohio") executed a promissory note (the "Note") in favor of the Plaintiffs. The Note was executed in connection with Wilson's purchase of three parcels of commercial real property (the "real estate"), plus improvements, from the Plaintiffs. Pursuant to the Note, Wilson and OP Ohio unconditionally promised to pay Plaintiffs the principal sum of $3,530,000. The Note formed part of the consideration for the purchase of the real estate along with funds borrowed by Wilson from Huntington National Bank (the "Huntington Bank") and Key Bank, N.A. ("Key Bank").

Wilson ultimately transferred the purchased real estate assets to OP Ohio and HG Ohio Corporation ("HG Ohio"), another corporation that he solely owned and controlled as sole shareholder and officer. HG Ohio unconditionally guaranteed the obligations under the Note.

HG Ohio's primary lender at the time was Key Bank. A covenant in HG Ohio's loan documents with Key Bank prohibited HG Ohio from taking on any subordinated debt outside the ordinary course of business. This covenant should have imposed a barrier to HG Ohio's guarantee of the Note obligations. Nevertheless, Wilson had the Plaintiffs sign a "No-Lien Agreement" in an effort to hide the HG Ohio guarantee from

2

Key Bank. The No-Lien Agreement was intended to prohibit any actions on behalf of the Plaintiffs to enforce rights under the Note that might have highlighted the existence of the Note and the related guaranty obligations to Key Bank.

The Note provided that payment of the principal sum of $3,530,000 was due on or before June 1, 2009 and further provided for the pledge of certain collateral to the Plaintiffs by Wilson and OP Ohio to secure payment of the Note and any other indebtedness to the Plaintiffs. The Note referenced a "subordination agreement" between Wilson and Huntington Bank pursuant to which the amounts owing under the Note were deemed to be subordinated to any payments owed from Wilson and OP Ohio to Huntington Bank, including without limitation a certain debt of $2,950,000 extended by Huntington Bank to Wilson and OP Ohio on May 6, 2006.

Plaintiffs were never presented with and never executed a subordination agreement. To date, no payments have ever been made on the Note by Wilson or the companies he controlled, including OP Ohio, HG Ohio, or anyone acting on their behalf. The failure to pay constituted a default under the terms of the Note and guarantees. Wilson failed to pay the Plaintiffs any portion of the $3,530,000 principal on the payment date or at any time afterwards.

In 2010, the Plaintiffs brought suit in state court in Ohio in the Stark County Court of Common Pleas, Case No. 2009 CV 0227 (the "Ohio State Court Action") to enforce the Note and moved for the appointment of a receiver. Wilson thereafter caused bankruptcy petitions to be filed for both HP Ohio Corporation ("HP Ohio") (Bankr. Case No. 09-64631) and OP Ohio (Bankr. Case No 09-64633) (the "Ohio Bankruptcy Cases") in the

Easter Division of the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") at least in part to invoke the automatic stay.[1] The Ohio Bankruptcy Cases were jointly administered. The Ohio State Court Action was removed to the Bankruptcy Court and, according to the Plaintiffs, they were awarded summary judgment in an adversary proceeding allowing their claims against HG Ohio, OP Ohio and Wilson on their Note (the "Judgment"). The Bankruptcy Cases were ultimately dismissed by agreement which among other things preserved all of the Plaintiffs' rights and claims against Wilson under the Note. Wilson, at that time, appeared to be judgment proof, and the Plaintiffs were unable to satisfy in full or in part their claims under the Note.

According to the Plaintiffs, not only did Wilson and his wholly-owned entities fail to make any payment on the Note, upon information and belief, Wilson deliberately disbursed funds due to the Plaintiffs from and among the various businesses of which he was the sole owner, including from HG Ohio and OP Ohio, to Pine Street Management ("PSM"), Pine Street Investments ("PSI") and First Choice ("First Choice"), contrary to his clear obligations under the Note.

---

[1] The Plaintiffs incorrectly listed the Debtors as HG Ohio and OP Ohio. The Debtors were HP Ohio and OP Ohio. The bankruptcy cases were filed in the Eastern Division of the United States Bankruptcy Court for the Northern District of Ohio. *See* Holcomb v. HG Ohio Corp. (In re HP Ohio Corp.), Nos. 09-64631, 09-64633), 2010 WL 3257786 (Bankr. N.D. Ohio Aug. 13, 2010). The Plaintiffs commenced an adversary proceeding against HG Ohio, OP Ohio and the Debtor in the bankruptcy court (Adv. P. Nos. 09-6131 and 6132).

PSM was engaged to manage the properties that were sold by Plaintiffs to Wilson.[2] PSI was a "holding company" that, upon information and belief of the Plaintiffs, Wilson established to impermissibly move and hide funds from his creditors. Wilson acknowledged paying dividends to "investors" in PSI and First Choice from funds belonging to OP Ohio and HG Ohio, each a principal obligor and guarantor of the Note obligations, respectively, despite failing to pay any of the debt owed under the Note.

The Plaintiffs further allege that Wilson engaged in fraud and misrepresentation in inducing the Plaintiffs to enter into the real estate transaction and the related Note, asserting that Wilson fraudulently represented to the Plaintiffs that he had disclosed the existence and terms of the Note to Huntington Bank or Key Bank (the "Lenders") when, in fact, he had not done so. Wilson required the execution of the No-Lien Agreement to defraud Key Bank in direct violation of HG Ohio's agreements with Key Bank. The Plaintiffs contend that they "would never have entered into the transaction with Wilson, nor agreed to the terms of the Note had they known that the full scope of the transaction had not been disclosed to the Lenders as represented by Wilson and on the face of the Note." Plaintiffs would never have entered into the transaction with Wilson had they

---

[2] The Court takes judicial notice that the properties sold "included a shopping center in Hartville, Ohio known as Hartville Center; a shopping center in Green, Ohio known as Green Super Center and a shopping center in Plain Township, Stark County, Ohio known as Oakwood Plaza." In re HP Ohio Corp. & OP Ohio Corp., 2010 WL 3257786, at *1. According to the Ohio bankruptcy court, Wilson ultimately transferred Oakwood Plaza to OP Ohio and transferred Hartville Center and Green Super Center to HP Ohio Corporation ("HP Ohio")." Id.

5

known that, by doing so, Wilson was immediately in default to Key Bank, a default he actively sought to hide from Key Bank.

Finally, the Plaintiffs allege that Wilson's conduct evidences a systematic intention to misrepresent the terms of the deal, to misrepresent his ability to meet his obligations under the Note, to divert funds from his creditors, and to forestall satisfaction of his obligations to the Plaintiffs. Wilson also has refused to cooperate with the Plaintiffs' efforts to satisfy the Judgment obtained in the State Court Action and the Bankruptcy Cases. According to the Plaintiffs, on information and belief, Wilson was in the possession or custody of assets that he refused to disclose that could have been used to satisfy his obligations to Plaintiffs under the Note.

### III. THE MOTION TO DISMISS

The Defendant moves to dismiss the Plaintiffs' Complaint stating:

> [T]he Complaint, based entirely on vague, conclusory allegations of fraud, falls woefully short of the particularity pleading standards of Rule 9(b). Further, to the extent that the allegation of fraud includes an allegation that the Debtor misrepresented his ability to pay, such allegation should be dismissed for failure to plead a writing. Finally, as appears from the allegations of the Complaint, the Plaintiffs could not have been harmed by any alleged "actual fraud."

The Defendant summarizes the Plaintiffs' allegations of fraud pointing to 1) the Defendant's alleged misrepresentation to the Plaintiffs that he had disclosed the transaction to the senior lenders when he did not disclose "the full scope of the transaction;" 2) that the Defendant "misrepresented his ability to meet his obligations under the Note;" and 3) the Defendant caused the borrowers, HG Ohio and OP Ohio, to fraudulently divert assets to two affiliates, a certain Pine Street Management and Pine

6

Street Investments, which assets were presumably otherwise available to satisfy the Defendant's obligations the Plaintiffs. The Defendant concludes:

> [T]he allegations contained in the Complaint are woefully deficient. First, the allegations fail to satisfy the basic pleading requirement that allegations of fraud be pled with particularity. Second, the allegation that the Debtor fraudulently misrepresented his ability to pay fails to allege a writing as is required by Section 523(a)(2). Third, the allegations of fraudulent diversion of assets does not state a claim of fraud for which any damages might be available, because the Plaintiffs admit in their Complaint that their claims were subordinate to both KeyBank and Huntington Bank.

The Plaintiffs filed an Opposition to the Defendant's Motion to Dismiss. They maintain that they pled their allegations of fraud with sufficient particularity. In addition they set forth additional allegations and requested permission to amend the Complaint to include their further allegations. In particular, the Plaintiffs allege, among other things, that the Debtor disregard corporate procedures by ignoring Ms. Olszeski Tortola's rights as a board member of HP Ohio and HG Ohio and commenced the Bankruptcy Cases without requisite corporate authority and that the Defendant, at the section 341 meeting conducted in the jointly administered Ohio Bankruptcy Cases, was unable to explain the rationale for numerous intercompany transfers and to explain payments by the corporations to the Defendant and to PSM. The Plaintiffs concluded that that there was a pattern of deceit, fraud, and movement of money between and among the co-obligors on the Note to the Plaintiffs and other Debtor-owned and controlled entities that requires a finding of non-dischargeability. In addition the Plaintiffs assert that "the Note itself constitutes a written misrepresentation about the Debtor's financial condition and his ability and commitment to repay the debt evidenced by the Note. . . ." Lastly, the

7

Plaintiffs assert that have demonstrated harm, noting that the relief sought does not implicate the claims of Huntington Bank and Key Bank and that their claims have been reduced to judgment.

The Defendant filed a Reply to the Plaintiffs' Opposition, arguing that the Opposition failed to address the points made in the Motion to Dismiss, improperly asserting new facts and new theories not in the Complaint.

The Court conducted a hearing on January 30, 2018. At the hearing, counsel to the Defendant argued that the Plaintiffs had failed to set forth specific fraudulent transfers and, in addition, raised issue relating to justifiable reliance and causation. Counsel to the Plaintiffs indicated that the Complaint was predicated upon Husky Int'l Electronics, Inc. v. Ritz, __ U.S.__, 136 S.Ct. 1581 (2016). At the conclusion of the hearing, the Court directed the parties to file supplemental briefs and the Plaintiffs to file a proposed Amended Complaint providing more details with respect to their "actual fraud" theory.

## IV. DISCUSSION

The Defendant maintains that the Plaintiffs cannot "articulate a set of facts meeting the stringent pleadings [sic] standards applicable to fraud that would entitle Plaintiffs to except the subject debt from discharge." He adds:

> [E]ven if the Plaintiffs properly pled that the Debtor caused fraudulent transfers to be made, Husky does not provide relief. In Husky, Ritz's liability derived from his participation in fraudulent transfers that under a Texas statute made him personally liable for actual fraud. In this sense, the debt incurred by Ritz was "obtained by" actual fraud. The present case is quite different. Here, the Debtor is not alleged to be liable because of his participation in fraudulent transfers, but rather because he signed the promissory note. Since, under Ohio law, the Debtor's participation in the alleged fraudulent transfers is not in itself an independent basis for him to

be liable to the Plaintiffs, the debt owed to the Plaintiffs cannot be a debt "obtained by" actual fraud, and therefore Section 523(a)(2) does not apply.

The Plaintiffs in their Memorandum set forth a series of allegedly fraudulent transfers, providing specific dates, dollar amounts, and the identities of the transferors and transferees. They conclude:

> The above-described transfers by HG Ohio and OP Ohio, orchestrated by Wilson alone as the sole-shareholder of each entity, and many if not all of which directly benefited Wilson personally, were fraudulent because, Wilson, through HG Ohio and OP Ohio, made those transfers with the actual intention of hindering, delaying, or defrauding creditors, including the Plaintiffs.
>
> The above-described transfers were fraudulent because OP Ohio and HG Ohio were insolvent when the transfers occurred.
>
> The above-described transfers were fraudulent because they were transfers to insiders for antecedent debts, and the insider/transferee knew, or had a reasonable basis for believing, that the transferring debtor was insolvent at the time.

The Plaintiffs, after reciting the facts pertinent to the decision in Husky, argue that the decision is "precisely on point." The Plaintiffs, while recognizing that they could find no Ohio corporate statutes similar to the one referenced in the lower court decisions in Husky, argue that in order to reach a shareholder that caused an Ohio corporation to engage in actual fraud to the benefit of the shareholder and to the detriment of a corporate creditor, the creditor would have to undertake a veil-piercing action. They contend that a court in Ohio has already made findings that the Defendant and companies he either owned or controlled engaged in fraudulent transfers as either or both the transferor or transferee. In addition, the Plaintiffs assert that Ohio case law recognizes corporate veil

9

piercing to impose liability on a shareholder, citing Dombroski v. WellPoint, Inc., 119 Ohio St. 3d 506, 895 N.E.2d 538, 543 (2008).[3]

In addition to their Memorandum, the Plaintiffs filed a Notice of [Proposed Amended] Complaint for Determination of Dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A), which amended complaint contains a recitation of transfers that the Debtor allegedly made, or caused to be made, by and to companies he owned and controlled.

B. Analysis

The Court finds based upon the submissions of the parties that the Plaintiffs, through their proposed Amended Complaint, have substantially remedied the deficiencies the Defendant pointed out in his Motion to Dismiss. Moreover, pursuant to

---

[3] In Dombroski, the Supreme Court of Ohio stated:

> "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."

Dombroski v. WellPoint, Inc., 119 Ohio St. 3d 506, 510–11, 895 N.E.2d 538, 543 (2008) (citing Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc., 67 Ohio St.3d 274, 288-89, 617 N.E.2d 1075 (1993)). The court held that "to fulfill the second prong of the Belvedere test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." 119 Ohio St. 3d at 514, 895 N.E.2d at 545.

Fed. R. Civ. P. 15(a)(2), made applicable to this proceeding by Fed. R. Bankr. P. 7015, "the court should freely give leave [to amend] when justice so requires."

In Maine Coast Seafood, LLC. v. Cowles (In re Cowles), 578 B.R. 108, 143 (Bankr. D. Mass. 2017), this Court observed that the definition of "actual fraud" is elastic, stating:

> In Husky Int'l Elecs., Inc. v. Ritz, __ U.S. __, 136 S.Ct. 1581, 194 L.Ed.2d 655 (2016), the United States Supreme Court determined that a scheme involving fraudulent transfers that occurs without false representations can support an exception to discharge under § 523(a)(2)(A). The Court stated:
>
>> In such cases, the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance. In the fraudulent-conveyance context, therefore, the opportunities for a false representation from the debtor to the creditor are limited. The debtor may have the opportunity to put forward a false representation if the creditor inquires into the whereabouts of the debtor's assets, but that could hardly be considered a defining feature of this kind of fraud.
>
> Husky Int'l Elecs., Inc., 136 S.Ct. at 1587. Nevertheless, the Supreme Court observed: "There is no need to adopt a definition for all times and all circumstances here," id., stating
>
>> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." Neal v. Clark, 95 U.S. 704, 709, 24 L.Ed. 586 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." Ibid. Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."
>
> Husky Int'l Elecs., Inc., 136 S.Ct. at 1586.

In re Cowles, 578 B.R. at 143. *See also* Prado v. Erickson (In re Erickson), No. 16-10437-TMD, 2017 WL 4404286, at *3, n.33 (Bankr. W.D. Tex. Sept. 29, 2017) ("cases decided since

11

Husky v. Ritz [sic] have also held that there must be a nexus between the fraudulent transfers and the debt for which the discharge exception is sought.").[4]  Given those broad precepts and the policy of Fed. R. Civ. P. 15, liberally allowing amendments to pleadings, the Court concludes that the Plaintiffs should have the opportunity to amend their Complaint.

**V. CONCLUSION**

In accordance with the foregoing, the Court shall enter an order denying the Defendant's Motion to Dismiss.

By the Court,

*[signature]*

Joan N. Feeney
United States Bankruptcy Judge

Dated:  February 27, 2018

---

[4] The court cited the following cases:  In re Wilson, No. 16–30782, 2017 WL 1628878, at *8 (Bankr. N.D. Ohio May 1, 2017); In re Carvalho, Adv. No. 16–10001, 2016 WL 6794788, at *2 (Bankr. D.C. Nov. 15, 2016); and In re Vanwinkle, 562 B.R. 671, 677–78 (Bankr. E.D. Ky. 2016).